# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 358 | DATE | 2/23/2001 |
| CASE TITLE | BEM I, L.L.C. vs. Anthropologie, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the foregoing reasons, the court now confirms the Panel's PJI award (Doc. 82-1), and grants BEM's motion to modify the Supplemental Award (Doc. 98-1; 104-1).
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 number of notices | Document Number |
| | No notices required. | | FEB 27 2001 date docketed | |
| ✓ | Notices mailed by judge's staff. | | | 107 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 2/23/2001 date mailed notice | |
| ETV | courtroom deputy's initials | FEB 26 AM 10: 27 Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEM I, L.L.C., an Illinois limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> ANTHROPOLOGIE, INC., a Pennsylvania corporation, <br><br> Defendant/Counterplaintiff, <br><br> v. <br><br> BEM I, L.L.C., et al., <br><br> Counter and Third Party Defendants. | No. 98 C 358 <br><br> Judge <br> Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Anthropologie, Inc. and BEM I, L.L.C., parties to a lease dispute, arbitrated their differences. Late last year, this court entered an order that substantially confirmed the award, but left open a question concerning prejudgment interest. *See BEM I, L.L.C. v. Anthropologie*, No. 98 C 358, 2000 WL 1849574 (N.D. Ill. Dec. 15, 2000) (hereinafter, "December 15, 2000 Order"). BEM has now moved this court to (1) vacate the arbitration panel's award to Anthropologie of prejudgment interest, and (2) modify the panel's supplemental award to Anthropologie of attorneys' fees, costs and expenses. In response, Anthropologie asks that both awards be confirmed. For the reasons set forth below, the court confirms the panel's award of prejudgment interest, and modifies the supplemental award of attorneys' fees, costs and expenses.

## FACTUAL BACKGROUND

The background of this case is set forth in detail in the December 15 Order, at *1-5, and is therefore reviewed here only to the extent necessary for understanding this order. On October 13, 2000, the panel of three arbitrators (the "Panel") awarded Anthropologie $234,731.30 in lost profits due to BEM's construction delays (the "Award"). In addition, the Panel awarded interest from June 27, 1997 to the date of payment at the rate of 8.5% per annum simple interest ("prejudgment interest" or "PJI"). On December 1, 2000, the Panel issued a Supplemental Award to Anthropologie of $296,695, plus interest at a rate of 9.5% from the date of such Supplemental Award, for attorneys' fees, costs and expenses.

BEM timely moved that this court vacate both the Award and Supplemental Award. This court then issued its December 15 Order, confirming the Award. The court reasoned that, by awarding Anthropologie $234,731.30 in lost profits, the Panel had neither "exceed[ed] the powers delegated to [it] by the parties" nor exhibited "deliberate disregard of the law." *December 15 Order*, 2000 WL 1849574, at *8 (citing *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994)). Two specific rulings from the December 15 Order, though, have prompted the motions now before the court. First, the court postponed its decision as to whether the Panel's granting of PJI to Anthropologie was appropriate, *see* December 15 Order, at *10 ("The court is . . . unable to determine whether the Panel considered the legal issues surrounding a grant of interest, what authority it relied on in its resolution of the issue, or why it chose the interest rate of 8.5%."), and invited the parties "to submit additional briefs . . . concerning the bases for the Panel's decision . . . ." *Id.* Both

parties have since done so. Second, the court confirmed the Panel's Supplemental Award *in toto*, but expressed its willingness to reconsider such a ruling if "BEM seeks to raise objections to the Supplemental Award that it did not raise as to the Award." *Id.* at *5 n.5. BEM filed its motion for reconsideration on December 26, 2000.[1] The court now revisits these two issues, beginning with PJI.

## DISCUSSION

### A. The Panel's Prejudgment Interest Award

BEM argues that the Panel awarded PJI in "blatant disregard for Illinois law" because the lost profits at issue were not liquidated or an easily fixed amount. In support of this argument, BEM relies on case law interpreting the Illinois Pre-Judgment Interest Act, 815 ILCS 205/2. *See Movitz v. First Nat'l Bank of Chicago*, 982 F. Supp. 566, 568 (N.D. Ill. 1997); *Empire Gas Corp. v. American Bakeries Co.*, 840 F.2d 1333, 1342 (7th Cir. 1988); *Ouwenga v. Nu-Way Ag, Inc.*, 239 Ill. App. 3d 518, 526-27, 604 N.E.2d 1085, 1091 (3d Dist. 1992). In *Ouwenga*, the court noted that, "*absent an agreement between the parties*, prejudgment interest is properly awarded only when specifically provided for by statute, and only if the damages are liquidated or subject to exact computation." *See Ouwenga*, 239 Ill. App. 3d at 526-27, 604 N.E.2d at 1091 (emphasis added) (internal citation omitted).

---

[1] BEM styled this motion as one for reconsideration only because the court specifically invited such a motion in its December 15 Order. The court recognizes that it did not fully evaluate the Supplemental Award in its December 15 Order and, therefore, application of a reconsideration standard of review would be inappropriate. The court will instead consider the Supplemental Award utilizing the Federal Arbitration Act's similarly stringent vacatur standard. *See* 9 U.S.C. §§ 10, 11.

Anthropologie insists that the Pre-Judgment Interest Act is not applicable because, here, the parties had an express agreement. The court concludes that the Panel could reasonably have reached that determination. The reference to the American Arbitration Association's Commercial Rules (the "Commercial Rules") in § [23] of the Lease arguably constitutes an agreement to an award of interest. Rule 45(a) of the Commercial Rules does not mention PJI per se, but does state that: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." Moreover, Rule 45(d) states that: "The award of the arbitrator(s) may include . . . interest at such rate *and from such date* as the arbitrator(s) may deem appropriate . . . ." (emphasis added).

To be sure, Anthropologie did not raise the issue of PJI before the Panel. As BEM points out, Anthropologie did not specifically request PJI in either its closing arguments or its post-evidentiary hearing memorandum submitted to the arbitrators. Notwithstanding that fact, Anthropologie had, all along, requested that the Panel award "any and all additional and further relief deemed appropriate by the Panel." The Panel obviously considered a PJI award to be appropriate, and chose the amount of 8.5% per annum. Disappointingly, the Panel itself failed to provide any specific rationale for its choice of 8.5%, but Anthropologie has offered the court an explanation. Anthropologie focuses the court on Section 40 of the Lease, entitled "Default Rate," which provides that payments by a party "shall accrue interest at the prime rate of interest then charged by Chase Manhattan Bank . . . plus one percent (1%) per annum." Because Chase's current prime rate was 9.5% on October 13, 2000, the argument

-4-

goes, the Panel used its discretion under Rules 45(a) and (d) to award PJI at a rate 1% lower than the prime, and 2% lower than the maximum rate allowable under the Lease. Anthropologie further notes that the 9.5% interest rate attached to the Supplemental Award "reflected the Panel's deliberate decision that it was just, equitable and 'appropriate' for Anthropologie to receive a postjudgment interest rate that was 1% higher than the prejudgment interest rate of 8.5%." Anthropologie's Supplemental Memorandum Supporting Confirmation of Arbitration Award of Prejudgment Interest, at 6.

The court acknowledges that, even after the parties' submission of supplemental briefs, the basis for the Panel's decision to award PJI at the rate of 8.5% remains uncertain; nevertheless, because Anthropologie's explanation is plausible and the Commercial Rules allow for significant latitude, the court considers the Panel's decision within the boundaries of the Lease and therefore confirms the Award.

B. The Panel's Supplemental Award

The court turns next to the Supplemental Award, the determination of which consisted of a two-step calculation. In the first step, the Panel assessed Anthropologie's total amount of fees, costs, and expenses, and, in the second step, multiplied that amount by the fraction described in § [23] of the Lease.[2] BEM contends that the Panel erred during both

---

2   Section 23 of the Lease (emphasis added) states, in relevant part:
The parties hereto further agree that if the arbitrators render a decision in favor of Landlord, in part, and Tenant, in part, then the allocation of responsibility for all reasonable costs and expenses (including attorneys' fees and expenses) and the fees and

(continued...)

steps. Pursuant to the FAA's standard, the court will only vacate the Supplemental Award if the Panel "exceeded its powers," *see* 9 U.S.C. 10(a)(4), or materially miscalculated the relevant figures. *See* 9 U.S.C. § 11(a).

1. **Total Fees, Costs and Expenses**

As to the first step, BEM argues that, under Illinois law, the Panel was not allowed to include in the overall sum certain witness fees, photocopying and on-line research expenses, and telephone charges.[3] With respect to witness fees, BEM claims that, in Illinois, the only cost or expense for a witness which a litigant can recover is the witness fee specified in 705 ILCS 35/4.3–such witness fee consisting of a per diem sum of $20 for each day's attendance at trial or deposition and $.20 per mile each way for necessary travel. Next, to dispute the inclusion of photocopying, facsimile and telephone charges, BEM relies on *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 518 N.E.2d 424 (1st Dist. 1987). According to *Kaiser*, such costs are "normally included in office overhead and, in turn, encompassed within the hourly attorney fee rate charged by the firm." *Kaiser*, 164 Ill. App. at 989, 518 N.E.2d at 431. Finally, citing *First Colonial Trust Co. v. H.S. Crocker Co.*, 90 C 3952, 1994

---

[2](...continued)
expenses of the arbitrators shall be equitably prorated based upon a fraction, *the numerator of which shall be the total amount of the arbitrators' award to Tenant and the denominator of which shall be the total amount of the Tenant's claims which were the subject of the arbitration.*

[3] The Panel awarded witness fees and costs in the amount of $94,655, and photocopying, on-line research, and telephone and deposition charges in the amount of $51,295.

WL 49025 (N.D. Ill. Feb. 15, 1994), BEM claims that Anthropologie's request for on-line legal research fees should have been rejected because Anthropologie made no showing that the legal issues involved were not straightforward and amenable to traditional hardcopy research.

Anthropologie has already responded to each of these arguments in its Reply Brief in Support of its Petition for Attorneys' Fees, Costs and Expenses ("Reply Brief"), pages 17-21, which it submitted to the Panel on November 28, 2000. In this Reply Brief, Anthropologie argued that the parties contracted around 705 ILCS 35/4.3 by including a fee-shifting provision in the Lease which provides for the recovery of reasonable costs and expenses. Then, Anthropologie distinguished *Kaiser*. Citing *Medcom Holding Co. v. Baxter Travenol Lab., Inc.*, 200 F.3d 518 (7th Cir. 2000), Anthropologie argued that the Illinois Appellate Court's use of the word "normally" in the above-quoted language signified that, under certain circumstances, such costs can be recovered separately. *Medcom*, 200 F.3d at 520 ("*Kaiser* implies that overhead expenses may be recovered separately if the law firm shows that their reimbursement does not duplicate services provided as part of the hourly rate."). To its Reply Brief, Anthropologie attached an affidavit of its lead outside counsel, Frederic R. Klein, who stated that his law firm's legal rates do not include in its overhead "expenses for photocopying, computer research, faxes, mail, Federal Express or other courier services, messenger companies, or travel." Klein Aff. at ¶ 3. Finally, Anthropologie cited a number of cases, including *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995), which, while decided under federal law, indicate that computerized research is recoverable as attorneys' fees. *See Uniroyal*, 63 F.3d at 526 ("In *Haroco v. American Nat'l*

*Bank & Trust*, 38 F.3d 1429, 1440-41 (7th Cir. 1994), after noting the similarities between computerized research and traditional manual research, we concluded that there was no reason to consider one type of research reimbursable as attorneys' fees and not the other.").

The Panel reviewed the parties' positions on these issues before deciding that its Supplemental Award should include all of these costs and expenses. *See* Supplemental Award (noting that the Panel "reviewed the Claimant's Petition for Reasonable Attorneys fees, Costs and Expenses, the Respondent's Objections to said Petition and Claimant's Reply Brief in Support of its Petition"). The Panel's consideration of these legal issues, coupled with the narrow standard of review afforded arbitral awards, directs this court to reject BEM's argument.

2. **The Section 23 Fraction**

The court is concerned, however, with the Panel's execution of the calculation's second step. In their submissions to the Panel, the parties offered their own interpretations as to what amounts should be included in both the numerator and denominator of the § [23] fraction. BEM argued that the correct fraction equaled 21.5%–the numerator ($234,731) based on the Panel's Award of lost profits, not including PJI, and the denominator ($1,091,709) including all damages sought by Anthropologie at arbitration, both actual and punitive.[4] Anthropologie considered itself to have been successful at arbitration on each of

---

[4] While BEM did not offer a percentage other than 21.5% in its brief to the Panel, it did suggest an alternative of 25.7% in its Motion for Reconsideration before this court. It arrived at 25.7% as follows: $297,731 (lost profits ($234,731.30) + PJI ($63,000))/$1,154,709
(continued...)

the contested issues, and therefore asked to recover 100% of its reasonable attorneys' fees, costs, and expenses. In the alternative, Anthropologie argued that if the Panel were to construe § [23] as to entitle it to only a fraction of its fees, costs and expenses, then that fraction should be 36%–the numerator ($302,731) based on "the financial aspects enjoyed by Anthropologie as a result of the Award," including $67,999.70 in PJI, and the denominator ($841,709) limited "to the actual damages claimed in the arbitration," thus excluding any claim for punitive damages.

The Panel accepted Anthropologie's alternative interpretation, and, in its Supplemental Award, calculated the fraction as follows:

> The numerator shall be $302,731 based upon the Award and accrued interest; the denominator shall be $841,709 based upon the amount claimed of $1,091,709 less the claim for punitive damages of $250,000 or 36% of the total attorneys fees, costs and expenses of [Anthropologie] of $824,152, excluding such fees costs and expenses incurred by [Anthropologie] in the preparation of its fee petition ($302,731/$841,709 =.36 x $824,152 = $296,695).

*See* Supplemental Award of Arbitrators. The Panel explicitly stated that this calculation was in accordance with § [23].

BEM considers the Panel's calculation to be both an abuse of its power, subject to vacatur under 9 U.S.C. § 10(a)(4), and "an evident material miscalculation of figures." 9

---

[4](...continued)
(requested actual damages ($841,709.20) + requested punitive damages ($250,000) + PJI ($63,000)). As set forth below, the court generally accepts this calculation as the most logical under the circumstances; however, it notes that BEM's calculation ironically contains a serious error of its own. The PJI that the Panel should have added to both the numerator and denominator was $67,999.70 ($302,731-$234,731.30), not $63,000.

U.S.C. § 11(a). Specifically, BEM argues that (1) if the numerator is deemed to include PJI, then the denominator should include PJI as well; and (2) there is no reason why punitive damages should have been excluded from the denominator. An "evident material miscalculation" occurs "where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award . . . ." *See National Education Corp. v. Martin*, No. 93 C 6247, 1995 WL 622267, at *6 (N.D. Ill. 1995). The court does not agree that the Panel committed a material miscalculation. Because the Panel was supplied with various alternatives by the parties, it assumes that the numbers chosen by the Panel were the result of a conscious decision.

The court nevertheless believes that the Panel exceeded its powers by "disregard[ing] the contract [and] implement[ing] [its] own notion[] of what is reasonable and fair." *See Hill v. Norfolk & Western Railway Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987). First, Anthropologie explicitly requested throughout the arbitration proceedings that the Panel award it $250,000 in punitive damages. As BEM notes in its Memorandum in Support of Motion for Reconsideration of Confirmation of Arbitrators' Supplemental Award of Attorneys' Fees to Anthropologie:

> Punitive damages were sought in Count I of Anthropologie's Third Party Complaint filed in these proceedings and referred by this Court to Arbitration on May 11, 1998, punitive damages were requested in Anthropologie's proposed arbitration award, punitive damages were prayed for in Counts III, IV and V of Anthropologie's First Amended Arbitration Claim, and punitive damages were argued for in Anthropologie's Post Arbitration Hearing Memorandum. Indeed, the October 13, 2000 arbitration award, confirmed by

this Court, made an explicit ruling on punitive damages, finding that 'as to Count III of the First Amended Claim for Punitive Damages, we find the record failed to support any showing of fraud by Respondent and . . . award Claimant no punitive damages.

at 4. According to the clear language of the § [23], which states that the denominator is to include "the total amount of the Tenant's claims which were the subject of arbitration," the $250,000 sought in punitive damages should have undoubtedly been included in the fraction's denominator. Second, the court has already confirmed the Panel's PJI award because it found that Anthropologie had implicitly included such amount in its general request for relief. *See supra*, Discussion, Section A. Moreover, the court believes that the Panel was within its power when it included $67,999.70 in PJI in the numerator of the § [23] fraction. For this same reason, though, the court finds no basis for the Panel to have opted not to include this amount in the fraction's denominator.

The court finds, then, that the $824,152 in fees, costs, and expenses should have been multiplied by 26.1% as opposed to 35.9%. The court arrives at 26.1% as follows: $302,731 (lost profits ($234,731.30) + PJI ($67,999.70))/$1,159,708.90 (requested actual damages ($841,709.20) + requested punitive damages ($250,000) + PJI ($67,999.70)). Based on this percentage, Anthropologie should have only received $215,103.67 (.261 x $824,152) in fees, costs and expenses. The court hereby modifies the Supplemental Award accordingly.

## CONCLUSION

For the foregoing reasons, the court now confirms the Panel's PJI award (Doc. 82-1), and grants BEM's motion to modify the Supplemental Award (Doc. 98-1; 104-1). The Clerk

of the Court shall enter judgment (1) on the Award to Anthropologie in amount of $234,731.30 with interest from June 27, 1997 to the date of payment at the rate of 8.5%, and (2) on the Supplemental Award to Anthropologie in amount of $215,103.67 for its attorneys' fees, costs, and expenses plus interest thereon at 9.5% from December 1, 2000 until the date of payment.

ENTER:

Dated: February 23, 2001

REBECCA R. PALLMEYER
United States District Judge